JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-03160-SSS-SPx | Date | August 13, 2026 |
| Title | *Jack Macias v. Mission Linen Supply et al.* | | |

| | |
|---|---|
| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 12]**

Before the Court is Plaintiff Jack Macias's ("Macias") motion to remand. ["Motion," Dkt. No. 12]. The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matter, the Court **GRANTS** the Motion.

## I. BACKGROUND

On August 5, 2022, Macias filed a wage and hour putative class action complaint in the California Superior Court for the County of San Bernardino. [Dkt. No. 1 at 3]. On November 2, 2022, Defendant Mission Linen Supply ("Defendant") removed this matter, which was assigned to this Court as 5:22-cv-01942-SSS-SP. Macias filed a motion to remand, which the Court granted. [*See* 5:22-cv-01942-SSS-SP, Dkt. Nos. 10, 19]. Defendant then removed this matter again on June 9, 2026, on the same grounds the Court rejected. [*See* Dkt. No. 1]. Defendant again argues this Court has jurisdiction "over the claims asserted in the Complaint is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a)." [*Id*. at 2]. For similar reasons stated in the Court's February 10, 2023 order, the Court rejects Defendant's contention and remands this matter to state court.

## II. LEGAL STANDARD

Federal courts are of limited jurisdiction and possess only that jurisdiction which is authorized by either the Constitution or federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a civil action may be removed from state to federal court if the action is one over which a federal court could exercise original jurisdiction.

"A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (holding the removal statute is "strictly construe[d] . . . against removal jurisdiction"). Moreover, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1988)). This presumption against removal "means that the defendant always has the burden of establishing that removal is proper." *Id.* (citations omitted). "[T]he court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

## III. DISCUSSION

Rather than specify which claims are preempted by Section 301 of the LMRA, Defendant vaguely contends "[t]he crux of this putative class action now relies on the text, interpretation, and analysis of incentive compensation arrangements in a multitude of different CBAs applicable to the approximately 169 employees at issue." [Dkt. No. 1 at 3]. Macias argues that the claim for unpaid nonproductive time violates the California Labor Code and Wage Orders and is not founded on, nor purely derived from, the CBA. [Mot. at 9–13].

Section 301 of the LMRA vests federal courts with jurisdiction to hear actions "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of parties." 29 U.S.C. § 185(a). However, preemption under Section 301 "extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 913–14 (9th Cir. 2018) (en banc). The U.S. Supreme Court has stated that Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of

state law[.]" *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985). For this reason, "[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional power of the states, and will naturally result in labor standards that affect workers differently from one jurisdiction to the next, even when those workers fall under a single labor agreement." *Alaska Airlines*, 898 F.3d at 919–20 (9th Cir. 2018); *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) ("Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301.'") (quoting *Lueck*, 471 U.S. at 211).

In the Ninth Circuit, courts conduct a two-step inquiry to determine whether Section 301 preempts state law claims. *Kobold*, 832 F.3d at 1032. "First, a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.'" *Id.* (alteration in original) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). Courts "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 123). "By contrast, claims are not simply CBA disputes by another name, and so are not preempted under the first step, if they just refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense." *Id.* (citations omitted).

Second, if the right exists independently of the CBA, courts "ask whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." *Id.* At this second step, a court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (alteration in original) (quoting *Livadas*, 512 U.S. at 125). The term "interpret" is construed narrowly; "it means something more than 'consider,' 'refer to,' or 'apply.'" *Alaska Airlines*, 898 F.3d at 921 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). Where there is no "active dispute over the meaning of contract terms," Section 301 preemption is not triggered. *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116 (9th Cir. 2018) (quoting *Alaska Airlines*, 898 F.3d at 921). In other words, "as long as the state-

law claim can be resolved without interpreting the agreement itself," there is no Section 301 preemption. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988).

With respect to step one, as stated, Defendant does not specify which claims are preempted by the LMRA in its notice of removal. [*See* Dkt. No. 1 at 4]. Defendant instead conclusively stated that "Each of Plaintiff's claims alleged in the Complaint exists solely as a result of the CBA and/or is substantially dependent upon analysis of the CBA." [*Id.*]. However, Macias states in his Motion that the claim for failing to pay "commission workers" for nonproductive time is a right secured by Wage Order 7, Section 12, and California Labor Code section 226.7 and section 226.2(a)(1). [*See* Mot. at 10]. Rather than argue that these state laws do not confer such rights, Defendant instead argues that the "putative class members are not paid piece rate" nor are "commission-only" workers, such that Labor Code section 226.2 does not apply. [Opp'n at 15]. Defendant further argues that its compensation scheme is lawful and that the "safe harbor provision" of Labor Code section 226.2 applies such that "any state law claim that Plaintiff could bring under Labor Code section 226.2" is extinguished. [*Id.* at 16]. Defendant's arguments are primarily regarding factual disputes.[1] Nonetheless, its Opposition makes clear that Macias's claim for nonproductive time payment is established by Labor Code section 226.2, not a CBA.

With respect to step two, the Court agrees with Macias that resolving his claim to nonproductive time does not require interpretation of the CBA. [Reply at 8–11]. Defendant's arguments regarding the lawfulness of its payment structure support this conclusion. [*See* Opp'n at 16]. The parties do not contest what the

---

[1] Defendant relies on *Williams v. J.B. Hunt Transp., Inc.*, 151 F.4th 1020 (9th Cir. 2025) to make the argument that its compensation plan is lawful, given that the Ninth Circuit upheld a "very similar 'hybrid compensation plan'" and thus, the safe harbor provision of Labor Code section 226.2, subsection (a)(7) "evidently applies." [*See* Opp'n at 15–17]. But *Williams* was an appeal of a summary judgment ruling, where the facts regarding the defendant's compensation scheme were uncontested and supported by evidence. 151 F.4th at 1030–31. The district court had to make a factual finding based on the evidence submitted that the safe harbor provision applied. *Id.* Further, as Macias identified, *Williams* did not involve a CBA or a *Burnside* analysis. [Reply at 8]. Thus, Defendant's assertion that the safe harbor provision "evidently applies" is misplaced, and cannot be used to confer federal court jurisdiction.

pay structure is, but rather, whether the structure is lawful under California law. *See Lujan v. S. California Gas Co.*, 117 Cal. Rptr. 2d 828, 836 (Cal. App. 2d Dist. 2002) ("Thus, the issue is not how to resolve a dispute over the interpretation of the [compensation scheme], but a legal question of whether the [scheme] complies with state law."). Accordingly, "this case is a matter of statutory interpretation" *McCray v. Marriott Hotel Servs.*, 902 F.3d 1005, 1012–13 (9th Cir. 2018) because the "primary task of the court deciding this case will be to determine whether the CBA's compensation system qualifies as 'piece-rate' under California law." *Moore v. Notre Dame De Namur U.*, No. 19-CV-05936-JST, 2020 WL 13517522, at *4 (N.D. Cal. Jan. 27, 2020). Thus, Defendant has failed to demonstrate that interpretation of the CBA is needed to resolve Macias's claim, and consequently fails to establish that Macias's claim is preempted by Section 301.

Defendant requests that the Court exercise supplemental jurisdiction over the remaining claims. [*See* Opp'n at 23–24]. However, because Defendant has not met its burden to establish that any of Macias's claims are preempted by the LMRA, the Court lacks subject matter jurisdiction over this action and cannot exercise supplemental jurisdiction over Macias's remaining claims. *See Moore v. Aramark Unif. Servs., LLC*, 2018 WL 701258, *5 (N.D. Cal. Feb. 5, 2018).

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Macias's Motion and **REMANDS** the case to the Superior Court of California, County of San Bernardino. The Clerk is **DIRECTED** to close the case. (JS-6)

**IT IS SO ORDERED.**